

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SUPERSEDING INDICTMENT |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 5:13-CR-00420 |
| v. | ) | |
| | ) | |
| BENJAMIN SUAREZ, | ) | JUDGE PATRICIA A. GAUGHAN |
| MICHAEL GIORGIO, and | ) | |
| SUAREZ CORPORATION | ) | Title 18, United States Code §§ 371, 1512(b)(1), |
| INDUSTRIES, INC., | ) | 1512(c), 1519, and 2; |
| | ) | Title 2, United States Code §§ 441b, 441f, and |
| Defendants. | ) | 437g(d)(1) |
| | ) | |

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material and relevant to this Indictment:

### The Defendants

1.     The defendant BENJAMIN SUAREZ was a resident of Canton, Ohio, located in

the Northern District of Ohio, Eastern Division.   SUAREZ was the founder and sole owner of

SUAREZ CORPORATION INDUSTRIES, INC. ("SCI"), as well as its President.

2.     The defendant MICHAEL GIORGIO was a resident of Cuyahoga Falls, Ohio, located in the Northern District of Ohio, Eastern Division.   GIORGIO was SCI's Chief Financial Officer.

3.     The defendant SCI was an Ohio corporation founded in 1970 engaged primarily in direct-marketing of consumer products and was headquartered in North Canton, Ohio, located in the Northern District of Ohio, Eastern Division.

### The Federal Election Laws

4.     The Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Section 431, et seq. (the "Election Act"), limited financial influence in funding election campaigns for federal office, including the offices of United States Senator and United States Representative, and provided for public disclosure of the financing of federal election campaigns. In particular:

    a.    The Election Act limited the amount and source of money that could be contributed to a federal candidate or that candidate's authorized campaign committee.

    b.    The Election Act prohibited any person from making contributions in the name of another.

    c.    The Election Act prohibited corporations from making contributions to candidates in connection with any federal election and in connection with any federal primary election, and prohibited officers and directors of any corporation from consenting to any such prohibited contribution by the corporation.

2

    d.     In 2011, the Election Act limited contributions from any one individual to any one candidate for primary and general election campaigns to $2,500 each, for a total of $5,000.

    e.     The Election Act defined contributions to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office," Title 2, United States Code, Section 431(8)(A).

    f.     The Election Act defined contributions of corporate money to also include: "any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value ... to any candidate ... in connection with any election to any of the offices referred to in this section," Title 2, United States Code, Section 441b(b)(2).

5.     The Federal Election Commission was an agency and department of the United States with jurisdiction to administer the limits and prohibitions of the Election Act, and to compile, publicly report and make available accurate information about the source and amounts of contributions to candidates for office.

6.     The Federal Bureau of Investigation was an agency and department of the United States with jurisdiction to investigate and enforce federal criminal laws, including the criminal provisions and prohibitions of the Election Act as well as laws related to public corruption.

3

The Grand Jury further charges:

## COUNT 1
### (Conspiracy to Violate Campaign Finance Laws, 2 U.S.C. §§ 437g(d)(1), 441b and 441f, in violation of 18 U.S.C. § 371)

7.     Paragraphs 1 through 6 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

8.     From in or around March 2011, through in or around September 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, BENJAMIN SUAREZ, MICHAEL GIORGIO, SCI, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, that is:

a.     to knowingly and willfully make contributions to a candidate for federal office in the names of other persons, aggregating $25,000 and more during a calendar year, in violation of Title 2, United States Code, Sections 437g(d)(1) and 441f; and

b.     to knowingly and willfully make a contribution from a corporation, in connection with any election at which a Senator or Representative was to be voted for, and in connection with any primary election for any of the foregoing offices, and to consent to any contribution by a corporation prohibited by this section, aggregating $25,000 and more during a calendar year, in violation of Title 2, United States Code, Sections 437g(d)(1) and 441b.

### Objects of the Conspiracy

9.     The objects of the conspiracy were (A) to disguise and conceal from the public and from federal agencies with jurisdiction to administer federal campaign finance laws and

investigate violations of those laws (1) the true sources and amounts of contributions to an Ohio

candidate for the United States Senate and an Ohio candidate for the United States House of

Representatives, and (2) the identity of SCI as a contributor to those campaigns; (B) to contribute

SCI's funds to those campaigns, when such corporate contributions were prohibited, by using

conduit contributors and reimbursing the conduit contributors with SCI's funds; and (C) to gain

influence for SCI and BENJAMIN SUAREZ through such disguised contributions.

### Manner and Means

10.     It was part of the conspiracy that BENJAMIN SUAREZ agreed to raise

approximately $100,000 for the 2012 authorized campaign committee of an Ohio candidate for the

United States House of Representatives ("2012 House Campaign").

11.     It was further part of the conspiracy that BENJAMIN SUAREZ agreed to raise

approximately $100,000 for the 2012 authorized campaign committee of an Ohio candidate for the

United States Senate ("2012 Senate Campaign").

12.     It was further part of the conspiracy that BENJAMIN SUAREZ and MICHAEL

GIORGIO recruited individuals who worked for and were otherwise associated with SCI to act as

conduits; that is to make contributions in their own names and those of their spouses ("conduit

contributors") to the 2012 House Campaign and the 2012 Senate Campaign.

13.     It was further part of the conspiracy that, in soliciting contributions to the 2012

House Campaign and the 2012 Senate Campaign, with BENJAMIN SUAREZ's knowledge and at

his direction, MICHAEL GIORGIO informed potential conduit contributors that the amount of

their and their spouse's contributions would be fully reimbursed by SCI.

14.     It was further part of the conspiracy that MICHAEL GIORGIO collected checks

and contribution forms from the conduit contributors, sometimes completed forms for the conduit

5

contributors, and sent the checks and forms and caused them to be sent to the 2012 House Campaign and the 2012 Senate Campaign.

15.  It was further part of the conspiracy that BENJAMIN SUAREZ and MICHAEL GIORGIO, working together and with others, directly and indirectly caused SCI to use its funds to reimburse the conduit contributors, including GIORGIO, for the campaign contributions that they made.

16.  It was further part of the conspiracy that BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI disguised the reimbursements for the campaign contributions as compensation from SCI, first as additional salary and later as profit sharing.

17.  It was further part of the conspiracy that SCI, BENJAMIN SUAREZ, MICHAEL GIORGIO, and others "grossed up" the reimbursement amount for payroll and other taxes to ensure that the conduit contributors received reimbursement for the full amount of their and their spouse's contributions.

18.  It was further part of the conspiracy that, after the conduit contributions were publicly exposed, BENJAMIN SUAREZ, MICHAEL GIORGIO, SCI, and others sought to conceal their conduct by recharacterizing the reimbursements as advances on profit sharing and requiring the conduits to repay the reimbursements to SCI in their entirety, including the amounts that had been "grossed up" to cover payroll and other taxes.

19.  It was further part of the conspiracy that BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI disguised and concealed the amount and source of campaign contributions and the identity of SCI as a contributor so that the public would be less likely to know the nature and extent of the support that SCI and SUAREZ were providing to the 2012 House Campaign and the 2012 Senate Campaign.

20.     It was further part of the conspiracy that BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI disguised and concealed the amount and source of campaign contributions and the identity of SCI as the true contributor to the 2012 House Campaign and the 2012 Senate Campaign in order to enhance SCI's and SUAREZ's ability to seek and obtain favorable treatment, including official acts that could benefit SCI's business interests, while decreasing the risk of potentially unfavorable public scrutiny.

**Overt Acts**

21.     To further the objects of the conspiracy, the members of the conspiracy committed the following overt acts, among others, in the Northern District of Ohio and elsewhere:

22.     From in or around March 2011 through in or around April 2011, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI caused approximately $90,000 in contributions to be made to the 2012 House Campaign using the following conduits (identified by initials only), in the following amounts, and by the following payment means, and caused the reimbursement of those contributions, using SCI's money, in the following amounts, by the following payment means, with each such act set forth as A or B below constituting a separate overt act:

| Overt Act No. | Initials of Conduit/ Relation to Other Conduits | Approximate Campaign Contribution and Payment Means (Overt Act "A") | Approximate Reimbursement and Payment Means (Overt Act "B") |
|---|---|---|---|
| 1 | M.B. | $5,000 Check dated 3/30/2011 | $15,661.71 Check dated 4/1/2011 described as regular salary, which included reimbursements for Overt Acts 1A and 2A |
| 2 | D.B., spouse of M.B. | $5,000 Check dated 3/30/2011 | |

| 3 | S.S. | $5,000<br>Discover charge 3/29/2011 | $17,448.96<br>Check dated 4/1/2011<br>described as regular salary,<br>which included<br>reimbursements for Overt<br>Acts 3A and 4A |
|---|---|---|---|
| 4 | E.C., then-fiancé<br>of S.S. | $5,000<br>Visa charge 3/29/2011 | |
| 5 | T.D. | $5,000<br>Check dated 3/30/2011 | $17,448.96<br>Check dated 4/1/2011<br>described as regular salary,<br>which included<br>reimbursements for Overt<br>Acts 5A and 6A |
| 6 | M.D.,<br>spouse of T.D. | $5,000<br>Mastercard charge<br>3/30/2011 | |
| 7 | MICHAEL<br>GIORGIO | $5,000<br>Check dated 3/30/2011 | $18,083.18<br>Check dated 4/1/2011<br>described as regular salary,<br>which included<br>reimbursements for Overt<br>Acts 7A and 8A |
| 8 | B.G., spouse | $5,000<br>Check dated 3/30/2011 | |
| 9 | D.H. | $5,000<br>Check dated 3/31/2011 | $14,695.08<br>Check dated 4/1/2011<br>described as regular salary,<br>which included<br>reimbursements for Overt<br>Acts 9A and 10A |
| 10 | S.H.,<br>spouse of D.H. | $5,000<br>Check dated 3/31/2011 | |
| 11 | B.H. | $5,000<br>Check dated 3/30/2011 | $7,830.85<br>Check dated 4/1/2011<br>described as regular salary |
| 12 | A.F. | $5,000<br>Check dated 3/30/2011 | $7,830.85<br>Check dated 4/1/2011<br>described as regular salary |

| 13 | P.K. | $5,000 Check dated 3/31/2011 | $15,661.71 Check dated 4/1/2011 described as regular salary, which included reimbursements for Overt Acts 13A and 14A |
|----|------|------|------|
| 14 | T.K., spouse of P.K. | $5,000 Check dated 3/31/2011 | |
| 15 | J.W. | $5,000 Check dated 3/30/2011 | $16,168.00 Check dated 4/1/2011 described as regular salary, which included reimbursements for Overt Acts 15A and 16A |
| 16 | S.W., spouse of J.W. | $5,000 Check dated 3/30/2011 | |
| 17 | M.C. | $5,000 Check dated 3/31/2011 | $15,987.00 Check dated 4/1/2011 described as regular salary, which included reimbursements for Overt Acts 17A and 18A |
| 18 | J.C., spouse of M.C. | $5,000 Check dated 3/31/2011 | |

23.     From in or around May 2011 through in or around June 2011, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI caused approximately $100,000 in contributions to be made to the 2012 Senate Campaign using the following conduits (identified by initials only), in the following amounts, and by the following payment means, and caused the reimbursement of those contributions, using SCI's money, in the following amounts, by the following payment means, with each such act set forth as A or B below constituting a separate overt act:

9

| Overt Act No. | Initials of Conduit/ Relation to Other Conduits | Approximate Campaign Contribution and Payment Means (Overt Act "A") | Approximate Reimbursement and Payment Means (Overt Act "B") |
|---|---|---|---|
| 1 | M.B. | $5,000 Check dated 5/26/2011 | $15,661.71 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 1A and 2A |
| 2 | D.B., spouse of M.B. | $5,000 Check dated 5/26/2011 | |
| 3 | S.S. | $5,000 Check dated 5/27/2011 | $8,726.00 Check dated 5/27/2011 described as profit sharing |
| 4 | E.C., then fiancé of S.S. | $5,000 Debit card transaction authorized on or before 6/13/2011 and posted on or about 6/13/2011 | $7,770.01 Check dated 5/27/2011 described as profit-sharing |
| 5 | T.D. | $5,000 Check dated 5/26/2011 | $17,376.19 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 5A and 6A |
| 6 | M.D., spouse of T.D. | $5,000 Check dated 5/26/2011 | |
| 7 | MICHAEL GIORGIO | $5,000 Check dated 5/27/2011 | $18,083.18 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 7A and 8A |
| 8 | B.G., spouse | $5,000 Check dated 5/27/2011 | |
| 9 | D.H. | $5,000 Check dated 5/31/2011 | $14,695.08 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 9A and 10A |
| 10 | S.H., spouse of D.H. | $5,000 Check dated 5/31/2011 | |

| 11 | B.H. | $5,000 Check dated 5/27/2011 | $8,613.26 Check dated 5/27/2011 described as profit sharing |
|----|------|------------------------------|-------------------------------------------------------------|
| 12 | A.F. | $5,000 Check dated 5/27/2011 | $7,830.85 Check dated 5/27/2011 described as profit sharing |
| 13 | P.K. | $5,000 Half of $10,000 check dated 5/27/2011 | $15,661.71 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 13A and 14A |
| 14 | T.K., spouse of P.K. | $5,000 Half of $10,000 check dated 5/27/2011 | |
| 15 | J.W. | $5,000 Check dated 5/26/2011 | $16,299.92 Check dated 5/27/2011 described as profit sharing, which included reimbursements for Overt Acts 15A and 16A |
| 16 | S.W., spouse of J.W. | $5,000 Check dated 5/26/2011 | |
| 17 | M.L. | $5,000 Check dated 5/31/2011 | $8,688.10 Check dated 5/27/2011 described as profit sharing |
| 18 | S.P.L. | $5,000 Check dated 5/26/2011 | $8,426.60 Check dated 5/27/2011 described as profit sharing |
| 19 | M.S. | $5,000 Check dated 5/27/2011 | $8,149.96 Check dated 5/27/2011 described as profit sharing |
| 20 | J.T. | $5,000 Check dated 5/31/2011 | $7,575.00 Check dated 5/27/2011 Receipt describes purpose with name of candidate for U.S. Senate |

24.     On or about March 18, 2011, BENJAMIN SUAREZ asked the 2012 Senate

Campaign candidate to write a letter to another public official on SCI's behalf regarding SCI's

business interests.

11

25.    On or before March 29, 2011, BENJAMIN SUAREZ asked the 2012 House Campaign candidate to write a letter to another public official on SCI's behalf regarding SCI's business interests.

26.    Beginning on or about May 17, 2011, BENJAMIN SUAREZ asked the 2012 Senate Campaign candidate to write an additional letter to another public official on SCI's behalf regarding SCI's business interests.

27.    On or about May 23, 2011, MICHAEL GIORGIO advised conduit contributor M.L. regarding contributions to the 2012 Senate Campaign stating that "the contribution an individual can give is limited to $5000.00, not $10,000."

All in violation of Title 18, United State Code, Section 371.

The Grand Jury further charges:

## COUNT 2
### (Violation of Campaign Finance Laws – Contributions in the Name of Another, 2 U.S.C. §§ 441f and 437g(d)(1), and 18 U.S.C. § 2)

28.    Paragraphs 1 through 6 and the factual allegations of paragraphs 22 and 23 and their subparts of this Indictment are realleged and incorporated by reference as if fully set forth herein.

29.    From in or around March 2011 through in or around June 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and willfully made and caused to be made contributions of money by SCI, aggregating $25,000 and more during the 2011 calendar year, in the names of other persons,

12

to the campaign of a candidate for the United States House of Representatives and to the campaign of a candidate for the United States Senate.

All in violation of Title 2, United States Code, Sections 441f and 437g(d)(1) and Title 18, United States Code, Section 2.

The Grand Jury further charges:

### COUNT 3
**(Violation of Campaign Finance Laws – Corporate Contributions,**
**2 U.S.C. §§ 441b and 437g(d)(1)(A)(i), 18 U.S.C. § 2)**

30.     Paragraphs 1 through 6 and the factual allegations of paragraphs 22 and 23 and their subparts of this Indictment are realleged and incorporated by reference as if fully set forth herein.

31.     From in or around March 2011 through in or around June 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other and others known and unknown to the Grand Jury, knowingly and willfully caused a corporation, to wit SCI, to make contributions in connection with any election at which a United States Representative and United States Senator were to be voted for, and in connection with any primary election held to select candidates for United States Representative and United States Senator, and consented to any prohibited contribution by a corporation, to wit SCI, aggregating $25,000 and more during the 2011 calendar year.

All in violation of Title 2, United States Code, Sections 441b(a), 441b(b)(2) and 437g(d)(1)(A)(i), and Title 18, United States Code, Section 2.

13

The Grand Jury further charges:

### COUNT 4
### (Causing False Statements, 18 U.S.C. §§ 1001(a)(2) and 2)

32.     Paragraphs 1 through 6 and the factual allegations of paragraph 22 and its subparts of this Indictment are realleged and incorporated by reference as if fully set forth herein.

33.     On or about April 15, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other and others known and unknown to the Grand Jury, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully caused the making of materially false, fictitious, and fraudulent statements and representations, that is the submission by the authorized campaign committee of a candidate for the United States House of Representatives to the Federal Election Commission of a report that was materially false in reporting the source and amount of contributions to the campaign.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

The Grand Jury further charges:

### COUNT 5
### (Causing False Statements, 18 U.S.C. §§ 1001(a)(2) and 2)

34.     Paragraphs 1 through 6 and the factual allegations of paragraph 23 and its subparts of this Indictment are realleged and incorporated by reference as if fully set forth herein.

35.     On or about October 4, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other and others known and unknown to the Grand Jury, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and

14

willfully caused the making of materially false, fictitious, and fraudulent statements and representations, that is the submission by the authorized campaign committee of a candidate for the United States Senate to the Federal Election Commission of a report that was materially false in reporting the source and amount of contributions to the campaign.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

The Grand Jury further charges:

## COUNT 6
### (Causing False Statements, 18 U.S.C. §§ 1001(a)(2) and 2)

36.    Paragraphs 1 through 6 and the factual allegations of paragraph 23 and its subparts of this Indictment are realleged and incorporated by reference as if fully set forth herein.

37.    On or about November 15, 2011, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other and others known and unknown to the Grand Jury, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully caused the making of materially false, fictitious, and fraudulent statements and representations, that is the submission by the authorized campaign committee of a candidate for the United States Senate to the Federal Election Commission of a report that was materially false in reporting the source and amount of contributions to the campaign.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

15

The Grand Jury further charges:

## COUNT 7
### (Conspiracy to Obstruct Justice, 18 U.S.C. §§ 1512(b), 1512(c), and 1519,
### in violation of 18 U.S.C. § 371)

### Introduction

38.     Paragraphs 1 through 6 and 10 through 20 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

39.     On or about August 18, 19, and 20, 2011, respectively, articles appeared in the Toledo Blade and Canton Repository newspapers questioning the significant number of maximum contributions made by employees of SCI to the 2012 House Campaign and the 2012 Senate Campaign.   These articles became known to BENJAMIN SUAREZ, MICHAEL GIORGIO, and others at SCI.

40.     Beginning in or around August 2011, the Federal Bureau of Investigation began conducting an investigation of SCI, its officers, employees, and those associated with their campaign contributions and related activities.   The scope of the FBI's investigation included, at various times, potential campaign finance violations, corruption, and other related criminal violations.

41.     Beginning in or around January 2012, a federal Grand Jury in the Northern District of Ohio began conducting an investigation of SCI, its officers, employees, and those associated with their campaign contributions and related activities.   The scope of the Grand Jury's investigation included, at various times, potential campaign finance violations, corruption, and other related criminal violations.   As part of the Grand Jury's investigation, subpoenas were issued, documents and evidence were gathered, and witnesses testified.

16

42.     On or about January 19, 2012, a federal Grand Jury subpoena was served on SCI, with a return date of February 28, 2012 ("Grand Jury Subpoena #1").   Grand Jury Subpoena #1 commanded production of the following documents, among others:

> Any and all records reflecting payments of any kind, including, but not limited to salaries, commissions, bonuses, royalties, profit-sharing, and expense or other reimbursements, for the time period of January 1, 2011, to the present, made to or received from (including credits or offsets) any of the following individuals. [List of certain SCI employees whose names were used as conduits to make contributions to the 2012 House Campaign and the 2012 Senate Campaign].

SCI produced certain documents in response to Grand Jury Subpoena #1 on February 24, 2012, and on August 8, 2012.

43.     On or about July 17, 2012, a federal Grand Jury subpoena was served on SCI, with a return date of August 8, 2012 ("Grand Jury Subpoena #2").   Grand Jury Subpoena #2 commanded production of the following documents, among others:

> Any and all records . . . regarding the computation and/or payment of profit sharing provided to any employee from January 1, 2006 - the present; any and all records regarding any advancement on profit sharing provided to any employee from January 1, 2001 - present. . . .

SCI produced certain documents in response to Grand Jury Subpoena #2 on August 8, 2012, and on August 21, 2012.

44.     On or about August 27, 2012, a federal Grand Jury subpoena was served on SCI, with a return date of September 11, 2012 ("Grand Jury Subpoena #3").   Grand Jury Subpoena #3 commanded production of the following documents, among others:

> Any and all records including, but not limited to email messages, correspondence, memoranda, notes, calendar entries, checks, logs, receipts, contracts, photographs, invitations, flyers or other documents:
>
> * * *

17

2. Reflecting any and all contacts between Ben Suarez, Mike Giorgio, or [a person whose initials are C.B.] and [the 2012 House Campaign candidate, 2012 House Campaign employees whose initials are L.E. or K.B.], or any other member of [the 2012 House Campaign candidate's] campaign or office staff, [the 2012 Senate Campaign candidate, a 2012 Senate Campaign employee whose initials are S.G.], or any other member of [the 2012 Senate Campaign candidate's] campaign or office staff.

3. Reflecting, discussing, addressing or relating to litigation or threatened litigation against the Suarez Corporation, its principals, employees and representatives by one or more district attorneys in the State of California and provided to or received from [the 2012 House Campaign candidate, 2012 House Campaign employees whose initials are L.E. or K.B.], or any other member of [the 2012 House Campaign candidate's] campaign or office staff, [the 2012 Senate Campaign candidate, a 2012 Senate Campaign employee whose initials are S.G.], or any other member of [the 2012 Senate Campaign candidate's] campaign or office staff.

4. Sent or provided to or received from [a person whose initials are C.B.] between January 2, 2011 and the present relating to, reflecting, discussing or addressing political contributions by the Suarez Corporation, its principals, employees or representatives to any candidate for elected office.

SCI produced certain documents in response to Grand Jury Subpoena #3 on September 24, 2012, and on October 5, 2012.

45. On or about February 4, 2013, a federal Grand Jury subpoena was served on SCI, with a return date of February 26, 2013 ("Grand Jury Subpoena #4"). Grand Jury Subpoena #4 commanded production of the following documents, among others:

Any and all records including, but not limited to email messages, correspondence, memoranda, notes, calendar entries, checks, payment records, logs, receipts, contracts, photographs, invitations, flyers, letters, copies of newspaper articles, pleadings or other documents, and all drafts or versions thereof, for the time period January 1, 2011, to the present:

* * *

18

     5.  Reflecting, referring to, discussing, addressing, or relating to, in any fashion, political contributions to any candidate for elected office or PAC.

* * *

SCI produced certain documents in response to Grand Jury Subpoena #4 on May 21, 2013, July 1, 2013, and July 16, 2013.

46.    During the course of their investigations, the Federal Bureau of Investigation and the Grand Jury obtained evidence, documents and records from various sources indicating that SCI, BENJAMIN SUAREZ and MICHAEL GIORGIO possessed documents and records that were responsive to the Grand Jury subpoenas, but that SCI had not produced to the Grand Jury.

47.    On or about January 22, 2013, during the course of the investigation, the Federal Bureau of Investigation executed a federal search warrant at SCI's offices and recovered items responsive to Grand Jury subpoenas #1, #2, and #3 described above.

48.    SCI produced to the Grand Jury certain additional responsive documents only after BENJAMIN SUAREZ and MICHAEL GIORGIO were indicted on or about September 24, 2013, for campaign finance, obstruction of justice and related violations.

### The Conspiracy to Obstruct Justice

49.    From in or around March 2011, through in or around September 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants, BENJAMIN SUAREZ, MICHAEL GIORGIO, SCI and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, that is:

    a.    to knowingly conceal, cover up, and falsify, and make a false entry in records, documents, and tangible objects with the intent to impede, obstruct, and influence

19

the investigation and proper administration of a matter within the jurisdiction of a

department and agency of the United States, and in relation to and in contemplation

of such matter and case, in violation of Title 18, United States Code, Section 1519;

b.     to corruptly obstruct, influence and impede any official proceeding, and attempt to

do so, in violation of Title 18, United States Code, Section 1512(c)(2); and

c.     to knowingly attempt to intimidate, threaten, and corruptly persuade a witness and

engage in misleading conduct toward a witness with the intent to influence, delay,

and prevent the testimony of a witness in an official proceeding, to wit: testimony

before a federal grand jury sitting in the Northern District of Ohio and any

subsequent related trial, in violation of Title 18, United States Code, Section

1512(b)(1).

## Objects of the Conspiracy

50.     The objects of the conspiracy were to impede, obstruct, delay and influence a

federal investigation of illegal campaign contributions and other related criminal conduct (A) by

covering up and concealing the true source and amount of contributions, and the identity of the

true contributor to the 2012 House Campaign and the 2012 Senate Campaign; (B) by covering up

and concealing the nature and extent of the relationship between SCI and BENJAMIN SUAREZ

on the one hand, and the 2012 Senate Campaign candidate and the 2012 House Campaign

candidate on the other, from the Federal Bureau of Investigation, the federal Grand Jury, and

agencies and departments with jurisdiction to administer and investigate those matters; and (C) by

falsifying certain records, concealing and withholding others, and seeking to influence, delay and

prevent the testimony and potential testimony of witnesses.

20

## Manner and Means

51.     It was part of the conspiracy that BENJAMIN SUAREZ, MICHAEL GIORGIO,

and others disguised the reimbursement payments from SCI to the conduit contributors so that they

falsely appeared to be compensation for work performed for SCI by the conduit contributors, who

were SCI employees and contractors.

52.     It was further part of the conspiracy that SCI issued checks to reimburse the conduit

contributors in the form of salary and profit sharing checks made payable to those conduits who

were SCI employees and contractors.   The amount of each check fully reimbursed the campaign

contributions made by the SCI employee or contractor adding, where applicable, the full amount

for his or her spouse as well.   The earnings statements for each check reflected withholding of an

additional amount calculated to account for employment-related taxes and withholdings normally

associated with salary and profit sharing payments so that each conduit contributor received the

full amount of both their and their spouses' contributions.

53.     It was further part of the conspiracy that in or around October 2011, after learning

that articles were published in the Toledo Blade and Canton Repository newspapers, and after

learning that FBI Special Agents were investigating the true source of certain funds contributed by

the conduit contributors to the 2012 House Campaign and the 2012 Senate Campaign,

BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI's Controller to create and distribute

documents entitled "Advance on Profit Sharing Report" for each SCI employee and contractor,

(with the exception of A.F.), who had been reimbursed for contributions to the 2012 House

Campaign, the 2012 Senate Campaign, or both.   Those reports were intended to create the

impression that the reimbursement payments that SCI had made previously to the conduit

contributors were actually "advances" that all along were meant to be repaid to SCI by the

21

employees and contractors, when in fact they were not. Those reports further included a calculation that subtracted the gross reimbursement amounts paid to the SCI employees and contractors (including amounts purportedly withheld as employment taxes) from profit sharing and commission amounts to be paid to the SCI employees and contractors in the future.

54.     It was further part of the conspiracy that in or around October 2011, after learning that articles were published in the Toledo Blade and Canton Repository newspapers, and after learning that FBI Special Agents were investigating the true source of certain funds contributed by the conduit contributors to the 2012 House Campaign and 2012 Senate Campaign, and without the prior agreement or consent of the conduit contributors, BENJAMIN SUAREZ, MICHAEL GIORGIO, and others, directly and indirectly caused SCI to offset the reimbursement payments SCI previously made to the conduit contributors against profit sharing and other compensation that the SCI employees and contractors earned in October 2011 and thereafter.

55.     It was further part of the conspiracy that SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO withheld documents, delayed the production of documents, and produced other documents only after learning that the Grand Jury had obtained them from other sources, which were responsive to a series of federal Grand Jury subpoenas relating to the federal investigation of improper campaign contributions and related criminal conduct.

56.     It was further part of the conspiracy that BENJAMIN SUAREZ and MICHAEL GIORGIO sought to develop a coordinated and inaccurate story to present to the Federal Bureau of Investigation, the federal Grand Jury, and agencies and departments with jurisdiction to investigate the contributions to the 2012 House Campaign and the 2012 Senate Campaign and the other matters set out herein being investigated by the Federal Bureau of Investigation and the Grand Jury.

22

57.     It was further part of the conspiracy that BENJAMIN SUAREZ sought to influence, delay and prevent the testimony of an employee of SCI, whose initials are B.H., concerning the contributions to the 2012 House Campaign, the 2012 Senate Campaign and related matters by (a) writing and having delivered a letter to B.H. relating to B.H.'s upcoming testimony before a federal Grand Jury, telling her not to communicate with her own lawyer, and containing an inaccurate version of events that SUAREZ wished to present; (b) writing and circulating an inaccurate letter to the employees of SCI opining that B.H.'s mental abilities had been compromised, referencing medical issues experienced by B.H., alleging that B.H. was under federal investigation, and opining that B.H. had suffered a personal tragedy as a result of the investigation; and (c) making statements to B.H. opining that B.H.'s mental abilities had been compromised.

58.     It was further part of the conspiracy that BENJAMIN SUAREZ sought to influence, delay and prevent the testimony of an employee of SCI, whose initials are M.P., by writing and having delivered a two page typewritten document to M.P. with the heading "[M.P.] WILL TESTIFY TO THE FOLLOWING" and containing an inaccurate version of events that SUAREZ wished to present.

## Overt Acts

59.     To further the objects of the conspiracy, the members of the conspiracy committed the following overt acts, among others, in the Northern District of Ohio and elsewhere:

### Disguising the Nature of the Reimbursements to the Conduit Contributors

60.     From in or around March 2011 through in or around April 2011, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI caused reimbursements for approximately $90,000 in

23

contributions to the 2012 House Campaign to be disguised as compensation from SCI using the following means, with each reimbursement constituting a separate overt act:

| Overt Act No. | Initials of Conduit Reimbursed | Approximate Reimbursement All Described as Regular Salary |
|---|---|---|
| 1 | M.B. | $15,661.71 Check dated 4/1/2011 |
| 2 | S.S. | $17,448.96 Check dated 4/1/2011 |
| 3 | T.D. | $17,448.96 Check dated 4/1/2011 |
| 4 | MICHAEL GIORGIO | $18,083.18 Check dated 4/1/2011 |
| 5 | D.H. | $14,695.08 Check dated 4/1/2011 |
| 6 | B.H. | $7,830.85 Check dated 4/1/2011 |
| 7 | A.F. | $7,830.85 Check dated 4/1/2011 |
| 8 | P.K. | $15,661.71 Check dated 4/1/2011 |
| 9 | J.W. | $16,168.00 Check dated 4/1/2011 |
| 10 | M.C. | $15,987.00 Check dated 4/1/2011 |

61.     From in or around May 2011 through in or around June 2011, BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI caused approximately $100,000 in contributions to the 2012 Senate Campaign to be disguised as compensation from SCI using the following means, with each reimbursement constituting a separate overt act:

24

| Overt Act No. | Initials of Conduit Reimbursed | Approximate Reimbursement All Described as Profit Sharing |
|---|---|---|
| 1 | M.B. | $15,661.71 Check dated 5/27/2011 |
| 2 | S.S. | $8,726.00 Check dated 5/27/2011 |
| 3 | E.C. | $7,770.01 Check dated 5/27/2011 |
| 4 | T.D. | $17,376.19 Check dated 5/27/2011 |
| 5 | MICHAEL GIORGIO | $18,083.18 Check dated 5/27/2011 |
| 6 | D.H. | $14,695.08 Check dated 5/27/2011 |
| 7 | B.H. | $8,613.26 Check dated 5/27/2011 |
| 8 | A.F. | $7,830.85 Check dated 5/27/2011 |
| 9 | P.K. | $15,661.71 Check dated 5/27/2011 |
| 10 | J.W. | $16,299.92 Check dated 5/27/2011 |
| 11 | M.L. | $8,688.10 Check dated 5/27/2011 |
| 12 | S.P.L. | $8,426.60 Check dated 5/27/2011 |
| 13 | M.S. | $8,149.96 Check dated 5/27/2011 |
| 14 | J.T. | $7,575.00 Check dated 5/27/2011 Receipt describes purpose with name of candidate for U.S. Senate |

**Recharacterizing the Reimbursements as Advances on Profit Sharing**

62.     In or around October 2011, BENJAMIN SUAREZ and MICHAEL GIORGIO

caused SCI's Controller to create "Advance on Profit Sharing Reports" as described below and

distribute them to the following conduit contributors to the 2012 House Campaign, the 2012 Senate Campaign, or both, with each recharacterization constituting a separate overt act:

| Overt Act No. | Initials of Recipient/Conduit | Approximate Amount Recharacterized as an "Advance on Profit Sharing" |
|---|---|---|
| 1 | M.B. | $31,323.42 |
| 2 | S.S. | $26,174.96 |
| 3 | E.C. | $7,770.01 |
| 4 | T.D. | $34,825.15 |
| 5 | MICHAEL GIORGIO | $36,166.36 |
| 6 | D.H. | $29,390.16 |
| 7 | B.H. | $32,105.81 |
| 8 | P.K. | $31,322.42 |
| 9 | J.W. | $32,467.92 |
| 10 | M.C. | $15,987.00 |
| 11 | M.L. | $8,688.10 |
| 12 | S.P.L. | $8,426.00 |
| 13 | M.S. | $8,149.96 |

63.    On or about November 13, 2012, MICHAEL GIORGIO provided an "Advance on Profit Sharing Report" to a person whose initials are J.T., a contractor of SCI who was used as a conduit for a contribution to the 2012 Senate Campaign and who was scheduled to testify shortly thereafter in the Grand Jury.

26

64.     On or about November 25, 2011, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies against the campaign contribution reimbursement payments that SCI had previously made on or about April 1, 2011, and May 27, 2011.

65.     On or about December 9, 2011, and December 22, 2011, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies against the campaign contribution reimbursement payments that SCI previously had made on or about April 1, 2011, and May 27, 2011.

66.     In or around January 2012, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies against the campaign contribution reimbursement payments that SCI previously had made on or about April 1, 2011, and May 27, 2011.

67.     In or around February 2012, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies against the campaign contribution reimbursement payments that SCI previously had made on or about April 1, 2011, and May 27, 2011.

68.     In or around March 2012, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies against the campaign contribution reimbursement payments that SCI previously had made on or about April 1, 2011, and May 27, 2011.

69.     In or around April 2012, BENJAMIN SUAREZ and MICHAEL GIORGIO caused SCI to withhold payment of money from SCI employees and contractors and to offset such monies

27

against the campaign contribution reimbursement payments that SCI previously had made on or about April 1, 2011, and May 27, 2011.

### Documents Withheld in Response to Grand Jury Subpoenas

70.     From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO withheld a one-page note in SUAREZ's handwriting and an attached five-page typewritten document containing GIORGIO's handwriting, which sought to coordinate their stories and recounted SUAREZ's proposed version of the conduit contributions, the conduit contributors' profit sharing, and contact with the 2012 House Campaign and the 2012 Senate Campaign.

71.     From on or about January 14, 2013, through on or about January 22, 2013, in response to Grand Jury Subpoena #2, SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO withheld a printed email from a conduit contributor, whose initials are J.T., to GIORGIO regarding the conduit's reimbursement for money deducted without his knowledge from his commissions "for the political issue" and stating that when he "wrote the original check" it was "with the knowledge I was being reimbursed NOT to be deducted again in the future." The document contained handwriting of both GIORGIO and SUAREZ regarding J.T.'s request.

72.     From on or about February 28, 2012, through on or about January 22, 2013, SCI and MICHAEL GIORGIO withheld a document summarizing the "Advance Profit Sharing Payments Paid April 1, 2011 and May 27, 2011" purportedly made to each conduit contributor to the 2012 Senate Campaign, the 2012 House Campaign, or both, that was responsive to Grand Jury Subpoenas #1 and #2.

73.     From on or about February 28, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #1, SCI and MICHAEL GIORGIO withheld documents that

contain GIORGIO's handwritten notes, regarding the wages from January 1, 2007, through September 15, 2011, of employees and other persons associated with SCI who were conduit contributors to the 2012 Senate Campaign.

74.      From on or about February 28, 2012, through on or about January 22, 2013, SCI and MICHAEL GIORGIO withheld a series of documents summarizing profit sharing amounts due in November and December 2011 to employees and contractors of SCI whose names were used to make conduit contributions to the 2012 Senate Campaign, the 2012 House Campaign, or both, subtracting the amounts previously reimbursed to them by SCI for such contributions, and including GIORGIO's handwritten notes, that were responsive to Grand Jury Subpoenas #1 and #2.

75.      From on or about February 28, 2012, through on or about January 22, 2013, SCI and MICHAEL GIORGIO withheld part of a document evidencing direct contact between SCI and the 2012 Senate Campaign, which was responsive to Grand Jury Subpoenas #1 and #3.

76.      From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI withheld a string of printed emails dated March 7, 2011, and March 8, 2011, between an SCI employee whose initials are L.P. and a consultant to BENJAMIN SUAREZ, whose initials are C.B., regarding delivery of a package to the 2012 Senate Campaign, which contained handwritten notes.

77.      From on or about September 11, 2012, through on or about October 5, 2013, in response to Grand Jury Subpoena #3, SCI withheld an email dated March 21, 2011, at 11:55 AM, from 2012 Senate Campaign employee S.G. to an SCI employee whose initials are M.P. in which S.G. asked M.P. to "give me a quick buzz" regarding a letter "I am working on today."

78.  From on or about September 11, 2012, through on or about October 5, 2013, in response to Grand Jury Subpoena #3, SCI withheld an email dated March 22, 2011, from 2012 Senate Campaign employee S.G. to M.P. referencing an attached letter regarding SCI's business interests.

79.  From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO withheld a fax cover sheet sent on March 25, 2011, from C.B. to SUAREZ stating that the 2012 House Campaign candidate "would appreciate a $5,000 [sic] from you and Nancy" that also contained SUAREZ's handwriting directing "Mike" to arrange such contributions.

80.  From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI withheld a letter dated March 29, 2011, from the 2012 House Campaign candidate to another public official regarding SCI's business interests.

81.  From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO withheld a fax cover sheet sent on April 8, 2011, from 2012 Senate Campaign employee S.G. to SUAREZ.  The fax contained SUAREZ's handwritten note "Mike Give $30 M [thousand]."

82.  From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, BENJAMIN SUAREZ and SCI withheld a memorandum to SUAREZ from 2012 Senate Campaign employee S.G. dated April 8, 2011, referencing the Ohio Senate Fund, a joint fundraising committee. At the bottom of the memorandum was a handwritten note "PD 4-13-11 CK #2674".

83.  From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI, BENJAMIN SUAREZ, and MICHAEL GIORGIO

withheld a memorandum to SUAREZ from the 2012 Senate Campaign candidate dated May 13, 2011, "RE: U.S. Senate Campaign Fundraising Deadline," that discussed the candidate's request that SUAREZ raise $100,000 for his campaign, and included a handwritten note from the candidate to SUAREZ, as well as a blank contribution form explicitly stating that corporate contributions were prohibited by law.

84.    From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI withheld a string of printed emails among L.P., M.P., C.B., and others, beginning on or about May 17, 2011 and continuing through on or about May 24, 2011, as well as the attached letters, discussing drafts of correspondence concerning SCI's business interests.

85.    From on or about September 11, 2012, through on or about January 22, 2013, in response to Grand Jury Subpoena #3, SCI withheld a printed email dated May 20, 2011, from M.P. to L.P. and others regarding a letter from the 2012 Senate Candidate regarding SCI's business interests to be sent to other public officials.

86.    From on or about August 8, 2012, through on or about March 1, 2013, in response to Grand Jury Subpoena #2, SCI and MICHAEL GIORGIO withheld an "Advance on Profit Sharing Report" for a person whose initials are J.T., a contractor of SCI who was a conduit contributor to the 2012 Senate Campaign.

87.    From on or about February 28, 2012, through on or about October 5, 2013, SCI and MICHAEL GIORGIO withheld a string of emails dated May 23, 2011, between GIORGIO and conduit contributor M.L. regarding contributions to the 2012 Senate Campaign wherein GIORGIO stated that "the contribution an individual can give is limited to $5000.00, not $10,000.", to which

31

M.L. responded "I need contributions…thinkin' of runnin' for warden of the asylum!" which emails were responsive to Grand Jury Subpoenas #1 and #3.

88.     From on or about February 26, 2013, through on or about October 5, 2013, in response to Grand Jury Subpoena #4, SCI and MICHAEL GIORGIO withheld an email dated August 18, 2011, from GIORGIO to conduit contributor D.H. forwarding a link to a news article regarding contributions by SCI employees to the 2012 Senate Campaign.

89.     From on or about February 26, 2013, through on or about October 5, 2013, in response to Grand Jury Subpoena #4, SCI and MICHAEL GIORGIO withheld an email dated August 18, 2011, from GIORGIO to conduit contributor B.H. forwarding a link to a news article regarding contributions by SCI employees to the 2012 Senate Campaign.

90.     From on or about February 26, 2013, through on or about October 5, 2013, in response to Grand Jury Subpoena #4, SCI and MICHAEL GIORGIO withheld an email dated August 18, 2011, from GIORGIO to conduit contributor P.K. forwarding a link to a news article regarding contributions by SCI employees to the 2012 Senate Campaign.

91.     From on or about December 15, 2011, through on or about October 5, 2013, SCI withheld a string of emails dated December 15, 2011, in which conduit contributor M.B,. in response to an article regarding the 2012 Senate Campaign candidate, stated "who the f*** cares! [g]ive me my 10,000 dollars back!", which emails were responsive to Grand Jury Subpoenas #3 and #4.

### Witness Tampering

92.     Sometime between on or about July 23, 2012, and on or about August 8, 2012, BENJAMIN SUAREZ caused a one-page note in SUAREZ's handwriting and an attached five-page typewritten document to be hand-delivered to the home of B.H. relating to B.H's

32

upcoming testimony before a federal Grand Jury and containing an inaccurate version of events that SUAREZ wanted B.H. to adopt and attest to and otherwise understand to be what SUAREZ wished to present.

93.     On or about February 25, 2013, BENJAMIN SUAREZ caused an inaccurate letter to be hand-delivered to SCI's employees opining that B.H.'s mental abilities had been compromised, referencing medical issues experienced by B.H., alleging that B.H. was under federal investigation, and opining that B.H. had suffered a tragic loss as a result.

94.     On or about February 25, 2013, BENJAMIN SUAREZ told B.H. that he believed her mental abilities had been compromised.

95.     On or about January 22, 2013, MICHAEL GIORGIO possessed a one-page handwritten note from BENJAMIN SUAREZ and an attached five-page typewritten document containing GIORGIO's handwriting that contained an inaccurate version of events that SUAREZ and GIORGIO planned to coordinate and present.

96.     Sometime prior to in or around July 2013, BENJAMIN SUAREZ caused M.P. to possess a two-page typewritten document from SUAREZ entitled "[M.P.] WILL TESTIFY TO THE FOLLOWING" and containing an inaccurate version of events that SUAREZ wanted M.P. to adopt and attest to and otherwise understand to be what SUAREZ wished to present.

97.     Sometime prior to May, 2013, BENJAMIN SUAREZ sent to M.P. a one-page handwritten note which M.P. was directed to type for B.H.'s attorney for her testimony.   It provided that B.H. should testify that "I have worked for MIKE GIORGIO for over 30 years.   He would never do anything illegal.   If he is indicted it will seriously damage SCI and likel[y] cause the loss of over 1000 jobs in our company."

All in violation of Title 18, United States Code, Section 371.

33

The Grand Jury further charges:

## COUNT 8
### (Witness Tampering, 18 U.S.C. § 1512(b)(1))

98.     Paragraphs 1 through 6 and 39 through 48 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

99.     Beginning in or around July or August 2012 and continuing through in or around February 2013, in the Northern District of Ohio, Eastern Division, the defendant, BENJAMIN SUAREZ, did knowingly attempt to use intimidation, threaten, and corruptly persuade another person and engage in misleading conduct toward another person who worked for SCI, whose initials are B.H., by (a) writing and having delivered to B.H. at B.H.'s home a one-page note in SUAREZ's handwriting with an attached five-page typewritten document relating to and providing direction regarding B.H.'s upcoming testimony before a federal grand jury, telling her not to communicate with her own lawyer, and containing an inaccurate version of events that SUAREZ wished to present; (b) writing and circulating an inaccurate letter to the employees of SCI opining that B.H.'s mental abilities had been compromised, referencing medical issues experienced by B.H., alleging that B.H. was under federal investigation, and opining that B.H. had suffered a tragic loss as a result of the investigation; and (c) making statements to B.H. opining that B.H.'s mental abilities had been compromised, all with the intent to influence, delay, and prevent the testimony of B.H. in an official proceeding, to wit: testimony before a federal grand jury sitting in the Northern District of Ohio and any subsequent related trial, in violation of Title 18, United States Code, Section 1512(b)(1).

34

The Grand Jury further charges:

**COUNT 9**
**(Obstruction of Justice, 18 U.S.C. §§ 1512(c) and 2)**

100.    Paragraphs 1 through 6 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

101.    From in or around July 2012, through on or about January 22, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants BENJAMIN SUAREZ, MICHAEL GIORGIO, and SCI, aided and abetted by each other, did corruptly obstruct, influence, and impede any official proceeding, and attempt to do so, by creating and then concealing the existence of a one-page note in SUAREZ's handwriting and a five-page typewritten document containing GIORGIO's handwriting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

The Grand Jury further charges:

**COUNT 10**
**(Obstruction of Justice, 18 U.S.C. §§ 1512(c) and 2)**

102.    Paragraphs 1 through 6 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

103.    From on or about May 23, 2011, through on or about January 22, 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendants BENJAMIN SUAREZ and SCI, aided and abetted by each other, did corruptly obstruct, influence, and impede any official proceeding, and attempt to do so, by concealing the existence of an email between C.B., L.P. and others, and the existence of drafts of a letter SUAREZ exchanged with the 2012 Senate Campaign candidate that SUAREZ asked the candidate to write to another public official on SCI's behalf

regarding SCI's business interests, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.